**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. ALICE A. EVANS, an individual, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 17-CV-433-TCK-MJX** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| 1.  TULSA PUBLIC SCHOOLS, a public | ) | **ATTORNEY'S LIEN CLAIMED** |
| entity, | ) | **FOR THE FIRM** |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMENDED COMPLAINT**

**COMES NOW** the Plaintiff, Alice A. Evans ("Plaintiff"), by and through her attorney of record, Charles C. Vaught of Armstrong & Vaught, P.L.C., and brings this action pursuant to the Americans with Disabilities Act of 1990, as amended, *42 U.S.C.§§ 12101, et seq.* (the "ADA") against Defendant, Tulsa Public Schools ("Defendant"). In support thereof, Plaintiff hereby states and alleges the following:

**JURISDICTION AND VENUE**

1.     Plaintiff was at all times relevant to this cause of action employed by Defendant within the Northern District of Oklahoma.

2.     Plaintiff was at all times relevant to this cause of action, domiciled in and a citizen of the State of Oklahoma.

3.     Plaintiff was at all times relevant to this cause of action an employee as defined by the ADA.

4.     Defendant is, and was at all times relevant to this action, a public entity maintaining offices in Tulsa County, Oklahoma

5.     Defendant is, and was at all times relevant to this action, an employer as defined by the ADA.

1

6.     Defendant does, and did at all times relevant to this action, employ in excess of fifteen (15) employees.

7.     The acts and/or omissions giving rise to this lawsuit occurred in Tulsa County, State of Oklahoma.

8.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, this Court has jurisdiction over the parties and the subject matter of this action, because the action arises under the Constitution and laws of the United States.

9.     Pursuant to 28 U.S.C. § 1391(b), this action properly lies in the Northern District of Oklahoma, because a substantial portion of the events or omissions giving rise to this claim occurred in the Northern District of Oklahoma.

10.    Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC"). Subsequently, Plaintiff submitted a Charge of Discrimination to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on April 25, 2017, which was not received by Plaintiff until April 27, 2017.

## OPERATIVE FACTS

11.    Plaintiff was hired by Defendant on or about February 7, 2013 as a Custodian.  Plaintiff was eventually assigned to work at Memorial High School.

12.    Plaintiff is a disabled individual under the American's with Disabilities Act, as amended. Plaintiff suffers from the following disabilities: (1) Small Vessel Coronary Artery Disease; (2) Angina; (3) High Blood Pressure; (4) Asthma; (5) Anxiety; (6) Depression; and (7) Migraines.  Plaintiff's disabilities are ameliorated, to some extent, by prescription medications and treatment modalities that her physicians have prescribed for her.

13.   Plaintiff's disabilities impair the following activities of daily living: while suffering from angina and other heart-related issues Plaintiff has difficulty in caring for herself, performing manual tasks, lifting, bending, concentrating, thinking, communicating, interacting with others and working.  Additionally, the operation of certain of Plaintiff's major bodily functions, especially her cardiovascular system, are impaired and substantially limit her major life activities.

14.   In or about May of 2016, Plaintiff began suffering heart problems and notified Tulsa Public Schools agents and/or employees of this fact.

15.   In May of 2016, Plaintiff underwent a heart catheterization procedure and was taken off work by her physician pending the results of that procedure.

16.   Plaintiff returned to work from the heart catheterization on approximately June 6, 2016. After working until her lunch break, Plaintiff was approached during her lunch break by her immediate supervisor, Delores Cornelius regarding whether Plaintiff had provided a release permitting her to return to work.  When Plaintiff confirmed that the release had been placed on Ms. Cornelius' desk, Ms. Cornelius requested that Plaintiff come into the hall to speak with her.  While in the hall, Ms. Cornelius proceeded to rant to Plaintiff about the quality of Plaintiff's work and attitude for no reason.  At the conclusion of Ms. Cornelius' rant, she ordered Plaintiff to return to work, even though Plaintiff had not been given an opportunity to finish her lunch.

17.   Later that day, Ms. Cornelius again approached Plaintiff, this time with the Zone Manager, Maria Mendoza, present.  During this conversation, Ms. Cornelius accused Plaintiff of being a "slacker" and that if she did not want to do the work, she should just leave. Additionally, Ms. Cornelius accused Plaintiff of being insubordinate, by arguing with her,

during their earlier conversation.  Plaintiff immediately denied this accusation and played audio of the meeting she had recorded, which clearly established to Ms. Mendoza that she had not, in fact, argued with Ms. Cornelius.

18. Subsequently, Plaintiff was assigned work away from the other custodians by Ms. Cornelius in an apparent effort to punish her for the meeting which had occurred between Plaintiff, Ms. Cornelius and Ms. Mendoza.

19. On June 14, 2016, Defendant issued a Personal Development Plan ("PDP") against Plaintiff for the events of June 6, 2016.  Included therein was an allegation that Plaintiff had clocked in to work early, even though she was never informed by her supervisors that her shift had changed, that she had refused to comply with Defendant's lunch schedule, even though Plaintiff was not permitted a lunch on June 6th due to Ms. Cornelius' actions, and for purportedly spreading "rumors" about Ms. Cornelius overworking Hispanic employees.

20. Plaintiff grieved the June 14, 2016 PDP with the Union and the PDP was removed from her permanent record.

21. By July 19, 2017, Plaintiff was taking nitroglycerin to address the increased chest pains she was suffering.

22. By August of 2016, Plaintiff's heart had deteriorated to the point where she began suffering from increased shortness of breath and chest pains.  As a result, Plaintiff approached Brenda Royal, Head of Maintenance, about her health problems and requested an accommodation to take breaks when she became short of breath or suffered chest pains. Plaintiff's request was denied by Ms. Royal.

23.   Shortly after making this request, Plaintiff began receiving false and unwarranted write ups for purported performance issues identified by Ms. Cornelius.

24.   Later in August of 2016, due to the extra work load necessitated by working with a crew which was short on help, the shortness of breath and chest pains Plaintiff suffered were increasing.  Plaintiff again approached Ms. Royal to request an accommodation which would permit extra breaks as needed to alleviate her symptoms.  At this time, Ms. Royal again denied Plaintiff's request for an accommodation and then recommended that Plaintiff take disability.

25.   On September 9, 2016, Plaintiff followed Defendant's procedures and submitted a vacation request for September 15th and 16th to Ms. Cornelius.  On September 15, 2016, Ms. Cornelius sent Plaintiff a text message and accused Plaintiff of adding the September 16th date to the form after Ms. Cornelius had approved and signed the vacation request.  In response, Plaintiff submitted a picture of the vacation request she had submitted to Ms. Cornelius which clearly established that both September 15th and 16th had been requested prior to the request being approved by Ms. Cornelius and the school Principal.

26.   On October 27, 2016, Plaintiff was placed on a PDP for, among other false infractions, falsifying her vacation request.

27.   Plaintiff grieved this PDP to the Union and it was removed from her permanent file.

28.   On or about November 11, 2016, Plaintiff was called into Ms. Cornelius' office for a meeting with Ms. Cornelius, Ms. Mendoza and Ms. Royal.  During this meeting, Plaintiff was again accused of not completing work tasks.  Plaintiff explained that the room she was accused of not cleaning was not assigned to her, to her knowledge.  In response, Plaintiff was advised that the assignment had been placed on a "communications board" in the office.   Plaintiff informed her supervisors that she does not have access to the communications board as she had previously been instructed to stay away from the other custodial staff by Ms. Cornelius and Ms. Mendoza and that the office was where the custodial staff congregated.  At the end of the meeting, Plaintiff's chest began hurting and she left to obtain her nitroglycerin pills from her lunch box in the break room of another building.  After sitting down in the break room due to the pain she was feeling in her chest, Ms. Royal and Ms. Mendoza entered the break room and castigated Plaintiff for sitting down.   As Plaintiff walked over to where her lunch bag was located to obtain a nitroglycerin pill, Ms. Royal followed her and informed Plaintiff that she was being switched to Mark Twain Elementary School as it would be an easier run with less work. Plaintiff was to gather her belongings and to be at Mark Twain by 2:00 that day.

29.   Ms. Royal's assertion to the contrary, Mark Twain was a more labor-intensive assignment for Plaintiff than what she had worked at Memorial.  While stationed at Memorial, Plaintiff was responsible for the cleaning of 14 classrooms, 1 set of student restrooms, 2 faculty restrooms, and 3 barrels of trash.  While at Mark Twain, Plaintiff was responsible for 18 classrooms, the library, the kitchen, the halls, 9 sets of student restrooms, 2 faculty restrooms, 7 barrels of trash, and approximately 4 to 5 barrels of café and kitchen trash.

30.     Plaintiff's heart condition deteriorated under these working conditions and she was taken off work by her physician on November 18, 2016.

31.     Plaintiff submitted an application for Family and Medical Leave to Defendant on November 23, 2016. This application indicated that Plaintiff was expected to be released to return to work on December 9, 2016.

32.     Plaintiff remained off work until she was released to return to work, on December 9, 2016, with the same restrictions that she had originally requested as an accommodation to Ms. Royal in August of 2016 – the ability to take breaks as needed for chest pain or shortness of breath.

33.     On December 9, 2016, Plaintiff presented her release to return to work to Ms. Royal's secretary, Brenda LNU and informed Brenda that she would need to rest approximately 10 minutes when her chest begins to hurt or she becomes short of breath. Brenda immediately informed Plaintiff that she could not work with restrictions and that she could not return to work until she was better.

34.     On January 3, 2017, Ms. Royal contacted Plaintiff and asked her to attend a meeting at Plant Operations. During this meeting, Ms. Royal asked Plaintiff why she had not been back to work. Plaintiff informed Ms. Royal that she had not been allowed to return to work due to the restrictions her physician had placed on her. Ms. Royal then informed Plaintiff that Defendant had not received any paperwork releasing her to return to work. However, after looking around her desk, Ms. Royal was able to locate Plaintiff's release and informed her that she would discuss the matter with Bill Naftzer, Support Director, and get back with Plaintiff.

35. However, Ms. Royal made no further efforts to contact Plaintiff after this meeting and Plaintiff was then placed on temporary total disability benefits due to an on-the-job injury Plaintiff had previously suffered while working for Defendant.

36. The acts and/or omissions described herein violate the American's with Disabilities Act, as amended, in that Defendant has willfully failed to make reasonable accommodations to Plaintiff's known disabilities.

37. Defendant's policy of requiring a full release to return to work after being absent due to a medical condition is a prima facie violation of the American's with Disabilities Act, as amended.

## FIRST CLAIM
### (DISCRIMINATION IN VIOLATION OF THE ADA)

38. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state as follows:

39. As a result of her heart condition, Plaintiff is disabled pursuant to the ADA.

40. In the alternative, Defendant perceived Plaintiff as disabled or Plaintiff had record of such impairment.

41. Plaintiff is qualified to perform, with reasonable accommodations, the essential functions of her employment with Defendant.

42. Defendant violated the ADA by failing to make reasonable accommodations for Plaintiff's known physical limitations.

43. By and through, but not limited to, the events described herein, Plaintiff's terms and conditions of employment were adversely affected by Defendant's refusal to make reasonable accommodations for Plaintiff's known physical limitations

44. By and through, but not limited to, the actions described herein, Defendant has violated the ADA, *42 U.S.C.§§ 12101, et seq.*, as amended.

45. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

46. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

47. Plaintiff has been injured by this discrimination, and is entitled to compensatory and punitive damages and any other damages available pursuant to the ADA.

WHEREFORE, premises considered, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; enjoin the Defendant from engaging in such conduct; enter a judgment for Plaintiff in an amount equal to the actual damages, compensatory damages, punitive damages and statutory penalties incurred for Defendant's violation, all in excess of $100,000.00, plus interest, costs and attorney fees; and grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

By: */s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
**ARMSTRONG & VAUGHT, P.L.C.**
2727 E. 21st Street, Suite 505
Tulsa, Oklahoma 74114
(918) 582-2500 – Phone
(918) 583-1755 – Fax
cvaught@a-vlaw.com
***Attorney for Plaintiff***